**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRIC OFALASKA**

IN THE MATTER OF THE ARREST OF

**Michael G. Whitmore**

Case No.: 3:21-mj-00142-MMS

Mar 11 2021

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A CRIMINAL COMPLAINT

I, JOLENE GOEDEN, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND TASK FORCE OFFICER BACKGROUND

1. I make this affidavit in support of an application for an arrest warrant for Michael G. Whitmore (hereinafter "SUBJECT"). An investigation has revealed that there is probable cause to believe that the SUBJECT has committed violations of 18 U.S.C. § 2252A(a)(2) (distribution of child pornography), and § 2252A(a)(5)(B) (possession of child pornography).

2. I have been a Special Agent with the FBI since March 2004. Since that time, I have been assigned investigative responsibilities in the areas of crimes against children, human trafficking, violent gangs and criminal enterprise investigations in the FBI Anchorage Field Office, where I am currently assigned. The Anchorage Field Office is located within the District of Alaska. During this assignment, I have focused on child pornography, kidnapping, human trafficking, drug, violent gang, criminal enterprises, and felon in possession of a weapon investigations. I have been involved in cases involving the investigation and prosecution of defendants for violations of Title 18 of the United States Code. Further, I have


Mar 11 2021

conducted and participated in a number of search warrants, arrest warrants, and interviews of people involved in federal crimes and criminal enterprises.

3. The statements in this affidavit are based in part on information provided to me by other law enforcement officers, police reports, and on my own investigation of this matter. Since this affidavit is being submitted for the limited purpose of securing an arrest warrant, I have not included each and every fact known to me concerning this investigation. I have only set forth the facts that I believe are necessary to establish probable cause to believe the SUBJECT has committed the offenses violations of 18 U.S.C. § 2252A(a)(2) (distribution of child pornography), and § 2252A(a)(5)(B) (possession of child pornography).

**RELEVANT STATUTES**

4. The relevant statutory authority and terms used in this affidavit and its attachments are described and defined below. The following statutes are relevant to this application:

a. 18 U.S.C. § 2252A(a)(2), Distribution of Child Pornography, states as follows:

> Whoever knowingly receives or distributes any child pornography using any means or facility of interstate or foreign commerce or that has been mailed, or has been shipped or transported in or affecting interstate or foreign commerce by any means, including by computer; or any material that contains child pornography using any means or facility of interstate or foreign commerce or that has been mailed, or has been shipped or transported in or affecting interstate or foreign commerce by any means, including by computer, or any person who attempts to do so, shall be guilty of a federal offense.

b. 18 U.S.C. §§ 2252A(a)(5)(B), Possession of Child Pornography, states as follows:



> Whoever, in the special maritime and territorial jurisdiction of the United States, or on any land or building owned by, leased to, or otherwise used by or under the control of the United States Government, or in the Indian country (as defined in section 1151), knowingly possesses, or knowingly accesses with intent to view, any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography; or knowingly possesses, or knowingly accesses with intent to view, any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography that has been mailed, or shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer, or any person who attempts to do so, shall be guilty of a federal offense.

**DEFINITIONS**

5. The following terms are relevant to this affidavit in support of this application for an arrest warrant:

a. Child Erotica: The term "child erotica" means any material relating to minors that serves a sexual purpose for a given individual, including fantasy writings, letters, diaries, books, sexual aids, souvenirs, toys, costumes, drawings, and images or videos of minors that are not sexually explicit.

b. Child Pornography: The term "child pornography" is defined at 18 U.S.C. § 2256(8). It consists of visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the visual depiction has

been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct), as well as any visual depiction, the production of which involves the use of a minor engaged in sexually explicit conduct. *See* 18 U.S.C. §§ 2252 and 2256(2), (8).

c. Minor: The term "minor" means any person under the age of eighteen years. *See* 18 U.S.C. § 2256(1).

d. Sexually Explicit Conduct: The term "sexually explicit conduct" means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any persons. *See* 18 U.S.C. § 2256(2).

e. Visual Depictions: "Visual depictions" include undeveloped film and videotape, and data stored on computer disk or by electronic means, which is capable of conversion into a visual image. *See* 18 U.S.C. § 2256(5).

## COMPUTERS AND CHILD PORNOGRAPHY

*The Role of Computers in the Production, Distribution and Possession of Child Pornography*

6. Based upon my training and experience as well as my discussions with others involved in child pornography investigations, computers and computer technology have revolutionized the way in which child pornography is produced, distributed, received, and possessed. Prior to the advent of computers and the Internet, child pornography was produced using cameras and film, resulting in either still photographs or movies. The photographs required darkroom facilities and a significant amount of skill in order to develop and reproduce the images. As a result, there were definable costs involved with the production of pornographic images. To distribute these images on any scale also required significant

resources. The photographs themselves were somewhat bulky and required secure storage to prevent their exposure to the public. The distribution of these wares was accomplished through a combination of personal contacts, mailings, and telephone calls, and compensation for these wares would follow the same paths. Now, through the use of computers and the Internet, distributors of child pornography can use various distribution networks, including but not limited to, personal email contacts, file-sharing services, list serves, and membership-based/subscription-based web sites to conduct business. These distribution networks have numerous advantages, including the ability to allow distributors to remain relatively anonymous.

7. The development of computers has also revolutionized the way in which child pornography collectors interact with each other, and sexually exploit children. Computers serve four basic functions in connection with child pornography: production, communication and distribution, and storage. More specifically, the development of computers has changed the methods used by child pornography collectors in these ways:

    a. Production: Producers of child pornography can now produce high resolution still and moving images directly from a common video or digital camera. These types of cameras are ubiquitous, present on nearly every cell phone sold. Once taken, images and videos can be saved onto a computer or uploaded onto a website or attached to an email within seconds. While still on the camera or after being saved onto a computer or uploaded into a photo or video editing program, images can be edited in ways similar to how a photograph may be altered - lightened, darkened, cropped, or otherwise manipulated. Videos can be edited or spliced together to create montages of abuse that can be several

 Mar 11 2021


minutes to several hours long. As a result of this technology, it is relatively inexpensive and technically easy to produce, store, and distribute child pornography. In addition, there is an added benefit to the pornographer in that this method of production does not leave a trail for law enforcement to follow. In some cases, depending upon the sophistication of the producer, it may be virtually impossible to law enforcement to determine the source of a sexually explicit image.

b. Communication and Distribution: The Internet allows any computer to connect to another computer. By connecting to a host computer, electronic contact can be made to literally millions of computers around the world. In addition, the Internet allows users, while still maintaining anonymity, to easily locate (i) other individuals with similar interests in child pornography; and (ii) web sites that offer images of child pornography. Child pornography collectors can use standard Internet connections, such as those provided by businesses, universities, and government agencies, to communicate with each other and to distribute child pornography. These communication links allow contacts around the world as easily as calling next door. Additionally, these communications can be quick, relatively secure, and as anonymous as desired. All of these advantages, which promote anonymity for both the distributor and recipient, are well known and are the foundation of transactions between child pornography collectors over the Internet. Sometimes the only way to identify both parties and verify the transportation of child pornography over the Internet is to

examine the recipient's computer to look for "footprints" of the web sites and images accessed by the recipient.

c. Storage: The computer's capability to store images in digital form makes it an ideal repository for child pornography. Moore's law predicts that the number of transistors in a dense integrated double circuit doubles approximately every two years. In the computing world, this translates to a doubling of computer memory capacity roughly every 24 months. This increase in computer storage is reflected in the modern computer. It is not uncommon to encounter hard drives containing 1 terabyte or more of data. According to Apple, Inc., 1TB of data can hold approximately 2 million standard resolution photographs. If those images are in high-resolution format, the number decreases to 26,000. *See* http://www.dpreview.com/forums/thread/3467175. A 1TB drive can also hold 357 DVD quality movies. *See* http://wiki.answers.com/Q/How_many_standard_movies_can_be_stored_on_a_1TB_external_hard_drive. Storage options located outside the physical boundaries of a computer add another dimension to the equation. It is becoming increasingly common for computer users to store images in the "cloud." Services such as Google Drive, Apple iCloud, Microsoft OneDrive, and Dropbox gives users the ability to store a nearly unlimited quantity of data. The result is the ability to maintain large collections of child pornography outside of a traditional computer, and to be able to access that collection from any device that is capable of connecting to the Internet and downloading images from the "cloud."



Mar 11 2021

*Characteristics of Child Pornographers*

8. My knowledge of preferential sex offenders and their characteristics is based on my experience as an FBI agent, and other training specific to child exploitation crimes and related computer storage I have received. Based upon such training and experience, as well as upon information provided to me by other law enforcement officers, I am aware of the following general characteristics, which may be exhibited in varying combinations:

a. Individuals who have a sexual interest in children or images of children may receive sexual gratification, stimulation, and satisfaction from contact with children, from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses (such as in person, in photographs, or other visual media), or from literature describing such activity.

b. Individuals who have a sexual interest in children or images of children may collect sexually explicit or suggestive materials in a variety of media, including photographs, magazines, motion pictures, videos, books, slides and/or drawings or other visual media.

c. Individuals who have a sexual interest in children or images of children oftentimes use these materials for their own sexual arousal and gratification. Further, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

d. Individuals who have a sexual interest in children or images of children often maintain their collections that are in a digital or electronic format in a safe, secure, and private environment, such as a computer hard drive or separate digital media. Often, these secure, private locations in which child pornography

are stored is on an individual's cell phone, tablet, or on a portable storage device. Each of these devices can be easily concealed. In addition, storage in some instances can be done in the "cloud," such that there are no active images or videos of child pornography located on a physical device. However, those images or videos remain accessible and in the possession of a user so long as that user has access to the internet.

e. Individuals who have a sexual interest in children or images of children also may correspond with and/or meet others to share information and materials; conceal such correspondence as they do their sexually explicit material; and often maintain lists of names, e-mail addresses or telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography. These interactions with other users can take place in person, or through mailed correspondence; however, they most often take place through various social media platforms, file-sharing services, messaging services, or through e-mail. All of these communications can be done through a computer, tablet, or cell phone.

f. Individuals who have a sexual interest in children or images of children prefer not to be without their child pornography for any prolonged time period. This behavior has been documented by law enforcement officers involved in the investigation of child pornography throughout the world. The result is that child pornography images and images or items of child erotica can be maintained for several years and are kept close by, usually at the possessor's residence, inside the possessor's vehicle, or, at times, on their person, to enable the individual to



view the child pornography images, which are valued highly. In addition, individuals may maintain collections on digital devices even after those devices have outlived their useful lives or been replaced by the user with more modern devices. I know that such devices can be stored in outbuildings, storage sheds and garages.

**PROBABLE CAUSE**

*Background of the Investigation - Identification of REDACTED on WickrMe*

9. The WickrMe application was developed by Wickr. WickrMe is an end-to-end encrypted application that allows users to send content-expiring messages, including photos, videos, and file attachments through the internet. Users can also send secret chats. Users do not need to register a WickrMe account and users remain anonymous. Users can connect in one-to-one or group chats. The application has the ability for self-destructing messages with a variable timer being assigned by the sender.

10. An Australian investigation into a WickrMe group exchanging child pornography material identified user "REDACTED"[1] as an individual distributing child pornography. On March 4, 2021, an online undercover employee (OCE) with the Australian Centre to Counter Child Exploitation (ACCCE) was reviewing a WickrMe group focused on the exchanging of child pornography when the OCE observed a post within the group at 8:59 p.m. on February 28, 2021, by user "REDACTED." The post stated asked users to comment on someone described as "REDACTED's" half-sibling and included a link to a minor's Facebook page. The minor's Facebook page did not show sexually explicit conduct.

---

[1] The username of the WickrMe account is known to law enforcement; however, it has been redacted from the affidavit in order to avoid impairing any follow-on investigations that may result from this case.



"REDACTED" solicited reactions and responses from group members. This was followed by a series of sexually descriptive posts from other members within the group about the minor. User "REDACTED" requested the other users go into detail and further descriptive posts were then added. The posts included things such as putting needles in the minor's genitalia and slapping the minor in the face until they cried.

11. "REDACTED" stated the minor was about to turn 12 years old and provided the minor's birthdate. One user responded that at that age the minor had a fully developed sexual organs and therefore could not be tortured by penetration like a younger child. "REDACTED" described what he would do the child which included engaging in intercourse with the minor.

12. On March 3, 2019, the OCE observed "REDACTED" in a different WickrMe group. This group was mainly centered around the sharing of child pornography. "REDACTED" was a member of this group.

13. On March 3, 2019 at 8:49 a.m., user "REDACTED" uploaded a video titled "trim.319DCD292-B35A-4BBA-B271-DDCA8CF71D7E" through the internet to a WickrMe group. The video was of an adult female wearing a mask sexually abusing an infant child. The video included the adult female forcing the child to touch her breasts and vagina and the adult female digitally penetrated the child's vagina. In addition, the adult female slapped the child on her vaginal and buttock area numerous times. The child was crying for much of the nine-minute video. The video is part of a known series of child pornography.

*Identification of Michael Whitmore as "REDACTED"*

14. Australian authorities forward information about "REDACTED" to the FBI's Child Exploitation Operational Unit (CEOU). The FBI's CEOU performed limited research into the username "REDACTED" and identified other platforms where a user with the username "REDACTED" was active. One of those platforms was chattoday.com. Law



enforcement contacted chattoday.com for non-content information related to user "REDACTED."

15. Chattoday.com responded and identified "mwhitmore93@REDACTED EMAIL PROVIDER.com" as the individual associated with the "REDACTED" username on the chattoday.com platform. The Chattoday.com user also listed his birthdate as  In addition, "mwhitmore93@REDACTED EMAIL PROVIDER.com" linked his WickrMe account to his Chattoday account. He indicated his username on WickrMe was "REDACTED." No other identifying information was retained by Chattoday.com.

16. Further review of the minor's Facebook page posted by "REDACTED" on WickrMe showed she was connected to Michael Whitmore. The child also posted a photo of a school certificate issued to them and the school was in Alaska.

*Identification of SUBJECT PREMISES*

17. A review of the Alaska Public Safety Information Network (APSIN) for Michael Whitmore, date of birth , showed that a person named Michael Whitmore listed as their home address a residence in Anchorage, Alaska (hereinafter "SUBJECT PREMISES"). This address was identified as their home address on March 22, 2012. Michael Whitmore's driver's license is valid until March 2022 and has not been updated since 2012.

18. A review of Alaska Permanent Fund Dividend (PFD) records showed that Michael Whitmore applied for his 2021 PFD on January 26, 2021, and listed his physical address as the SUBJECT PREMISES. One of the verifier's for Whitmore's PFD was an adult with the same last name who also listed the SUBJECT PREMISES as their residence.

19. A review of the Municipality of Anchorage property assessment website found that the SUBJECT PREMISES is owned by a relative of Whitmore's.



20. On March 8, 2021, FBI personnel observed Michael Whitmore come out of the SUBJECT PREMISES and throw away trash. He was later observed leaving the residence, shopping at Walmart, and then returning to the residence. FBI personnel reviewed a DMV photo of Whitmore and confirmed the male they observed was in fact Whitmore.

*Search of Whitmore's Residence (SUBJECT PREMISES)*

18. On March 10, 2021, United States Magistrate Judge Scoble authorized search warrant 3:21-mj-00136-MMS for the search of Whitmore's residence. On March 10, 2021, FBI agents searched the residence and seized an iPhone belonging to Whitmore. The SUBJECT identified this iPhone as his and gave law enforcement the password to access the device. The Apple iPhone is manufactured outside the state of Alaska.

*Interview of Michael Whitmore*

19. On March 10, 2021, agents interviewed the SUBJECT. He was advised of his *Miranda* Rights, waived those rights, and agreed to speak to agents. In summary, the SUBJECT provided the following information:

a. The SUBJECT admitted he has a sexual attraction to children. He stated his age of preference is five years old, but he views child pornography that shows children ages two to nine.

b. The SUBJECT stated he is on several applications where he both distributed and received child pornography and communicated with other offenders, including the Wickr application. The distribution and receipt of images via these various groups occurred through the internet. When the video titled "trim.319DCD292-B35A-4BBA-B271-DDCA8CF71D7E" was described to the SUBJECT by law enforcement agents, he remembered seeing the video and remembered uploading it to a Wickr group.

c. The SUBJECT stated he has distributed images and videos of child pornography to slightly less than 100 different people, and that he has used the Wickr application along with other social media applications to distribute and receive images of child pornography.

d. The defendant said that he was aware of other file-sharing programs but did not use them because he did not have access to Wi-Fi at his home, relying instead on cellular networks to access the internet. The defendant said that he specifically used Wickr because of the fact that it is end-to-end encrypted, and that his messages would be protected from law enforcement investigation. The defendant described his computer expertise as being an 8 on a scale of 1 to 10, and said that his expertise was somewhere between Bill Gates', the founder of Microsoft, and Mark Zuckerberg's, the creator of Facebook.

e. The SUBJECT stated he has approximately 1200 images and videos of child pornography on his phone. The defendant stated that he had installed an application on his phone to compress larger files in order to be able to more easily transmit those files to individuals who were unable to wait for files to download.

f. The SUBJECT identified a minor child he was attracted to and who he said he would have done something sexual to if he had had an opportunity.

g. The SUBJECT stated he has been viewing child pornography since the age of eighteen and recognized it became a problem for him as he got older.

*Review of the SUBJECT's iPhone*

20. Using the password provided by the SUBJECT, SA Goeden previewed the SUBJECT's iPhone. SA Goeden observed the Wickr application and noted the SUBJECT



belonged at 76 different groups or rooms. All of these groups appeared to be related to child pornography.

21. SA Goeden observed the SUBJECT was a member of the two WickrMe groups identified by Australian law enforcement and in which his WickrMe username had been observed. SA Goeden also observed at least five other WickrMe groups that appeared to be devoted to children, the sexual exploitation of individuals described as "young," or that were devoted to rape and torture.

22. In the SUBJECT's iPhone photo gallery, SA Goeden observed several folders of child pornography. For example, one folder titled "diapered brats" had 283 files in it. Among the files contained in the folders located on the SUBJECT's iPhone were images and videos showing infants and toddlers engaged in sexually explicit conduct, including images of naked infants and toddlers, as well as images of adults sodomizing and penetrating minor children.

23. A complete forensic review of the SUBJECT's iPhone is ongoing.

*Results of Wickr Search Warrant*

24. On March 10, 2021, law enforcement also received the result of a search warrant served on Wickr for information related to the "REDACTED" account. Wickr provided the following information:

    a. The "REDACTED" account was created March 25, 2018, and was currently being used on an iOS device.

    b. The number of messages sent and received by the "REDACTED" account was 99099 and received 268129, respectively.

    c. The profile picture for the account is an anime image of three children wearing only diapers. This image is consistent with what was provided by the Australian authorities in their referral of this case to CEOU.

*Summary of Probable Cause*

25. For the reasons stated herein, I submit that there is probable cause to arrest Michael G. Whitmore, for violations of 18 U.S.C. § 2252A(a)(2) (distribution of child pornography), and § 2252A(a)(5)(B) (possession of child pornography).

33. This probable cause is based on the following:

    a. On March 4, 2021, "REDACTED" posted in a WickrMe group centered around the sharing of child pornography a nine-minute video titled "trim.319DCD292-B35A-4BBA-B271-DDCA8CF71D7E" that showed the sexual abuse of a minor female.

    b. Michael Whitmore was identified as "REDACTED." During a search of Whitmore's iPhone, multiple images and videos of child pornography were identified on the device, including images of infants and toddlers being sexually abused. Whitmore stated he had approximately 1200 images and videos of child pornography on his phone.

    c. Whitmore admitted to law enforcement in a *Mirandized* statement to downloading and possessing child pornography on his iPhone, and to sharing the "trim.319DCD292-B35A-4BBA-B271-DDCA8CF71D7E" file through the Wickr application. Whitmore also admitted that he has distributed child pornography to slightly less than 100 different people.

Mar 11 2021

**CONCLUSION**

33. For the foregoing reasons, I submit that there is probable cause to believe that MICHAEL G. WHITMORE has committed a violations of 18 U.S.C. § 2252A(a)(2) (distribution of child pornography), and § 2252A(a)(5)(B) (possession of child pornography).

JOLENE GOEDEN
Special Agent, FBI
Child Exploitation Task Force

Subscribed and sworn pursuant to
Fed.R.Crim.P. 4.1 & 41(d)(3) on:
March 11, 2021

UNITED STATES DISTRICT COURT
DISTRICT OF ALASKA

MATTHEW M. SCOBLE
United States Magistrate Judge